UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 07-17 (JDB) |
| : | |
| FERNANDO ROSELES VASQUEZ, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION FOR GUIDELINE'S CREDIT
AND MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1 (a) of the Sentencing Guidelines, to adjust the defendant's offense level down two levels reflecting the defendant's acceptance of responsibility for this offense. The United States also submits this memorandum in aid of sentencing.

**I.      BACKGROUND**

On October 12, 2007, defendant pled guilty to one count of Possession of Fraudulent Documents Prescribed for Authorized Stay or Employment in the United States, in violation of 18 U.S.C. § 1546 (a). At that time the defendant signed a "Statement of Offense" and admitted to the following:

Had this matter proceeded to trial, the Government was prepared to prove beyond a reasonable doubt that on December 6, 2006, United States Park Police Officers Sean D'Augostine and Michael Abate were on patrol in the area of Rabaut Park at 16th Street and Columbia Road, Northwest, in this District when they saw a group of men congregating in the

1

park.  Officer D'Augostine saw an unidentified male hand the Defendant a white envelope.  As Officer D'Augostine approached the men, the Defendant began to walk away.  As the Defendant walked away, he placed the white envelope into his left pocket.

Officer D'Augostine stopped the Defendant and asked the Defendant for his identification.  The officer recovered from the Defendant a permanent resident card that contained the name and photograph of someone other than the Defendant, and a valid "A" number which had been previously issued to someone other than the Defendant.  The permanent resident card was counterfeit, altered and falsely made.  When the officer asked the Defendant if the permanent resident card belonged to him, the Defendant said that it did not, but that he "need[ed] the ID to work," and that the photograph on the permanent resident card was a photograph of "a friend at work."  The officer arrested the Defendant.

Following the arrest, the police searched the Defendant and recovered an employment authorization card that contained the name and photograph of someone other than the Defendant, and a valid "A" number that had been previously issued to someone other than the Defendant.  The employment authorization card was also counterfeit, altered and falsely made.  The police also recovered from the Defendant loose photographs of persons other than the Defendant, including a passport sized photograph that matched the photograph on the permanent resident card, and two other photographs that matched the photograph on the employment authorization card.  Additionally, the police recovered three social security cards in the name of three different persons other than the Defendant.  Although the three social security cards were counterfeit, altered and falsely made, each social security card contained a valid social security number that had been previously been issued to individuals other than the Defendant.

**II.    SENTENCING CALCULATION**

    A.    Statutory Minimums and Maximums

The crime of Possession of Fraudulent Documents Prescribed for Authorized Stay or Employment in the United States carries a maximum sentence of ten years imprisonment pursuant to 18 U.S.C. § 1546 (a), a fine not to exceed $250,000.00 pursuant to 18 U.S.C. § 3571 (b)(3) or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571 (d), and a term of supervised release of not more than three years pursuant to 18 U.S.C. § 3583 (b)(2).

    B.    Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Investigation Report ("PSR") calculates the defendant's total offense level at 6.  See PSR ¶ 23.  (This calculation contemplates a two-level decrease to the defendant's base offense level pursuant to Section 3E1.1 of the Guidelines).   The PSR calculates the defendant's criminal history as Category I.  See PSR ¶ 26.  Therefore, the PSR calculates the Guideline range for the defendant at 0 to 6 months ("Zone A").  See PSR ¶ 57.

**III.    GOVERNMENT'S RECOMMENDATIONS**

    A.    Acceptance of Responsibility

The government agrees that the defendant's base offense level should be decreased by two points pursuant to Section 3E1.1 of the Sentencing Guidelines.  He entered a guilty plea, thereby admitting the conduct comprising the offense, and he has cooperated in the pre-sentence investigation.  Accordingly, the government is moving the Court to grant a two-level decrease in the offense level pursuant to § 3E1.1 of the Sentencing Guidelines.

B.      Application of the Federal Guidelines post-Booker

The Court should impose a sentence within the Guidelines range. "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." United States v. Booker, 543 U.S. 220, 264 (2005) (citing 18 U.S.C.A. § 3553 (a)(4), (5) (Supp. 2004)). The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. A sentence within the Guideline range is reasonable in this case because it would help further the goals articulated in 18 U.S.C. Section 3553(a) such as "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

C.      Basis for Government's Sentencing Recommendation

Pursuant to 18 U.S.C. § 3553 (a), the Court should impose a sentence within the defendant's guideline range. More specifically, the United States does not oppose a sentence of time served, which sentence in this case would be a sentence of nearly three and one-half months. If the Court is inclined to grant a sentence of time-served or a probationary sentence, it is the position of both the United States that the question of a downward departure under Section

5K2.0 (a)(2)(B) of the advisory Sentencing Guidelines would be moot.[1]

Defendant is a 26 year-old male from Mexico City, Mexico who has lived and worked in this country illegally since he was 16. He has a minimal criminal record, stemming largely from his daily marijuana habit, but is otherwise gainfully – though illegally – employed. At the time of his arrest, he was facilitating the purchase of false identification documents for himself and several other people. A Guidelines sentence is appropriate in this case.

Because defendant has already served over three months in jail on an immigration detainer, and he would otherwise be eligible for a probationary sentence, the United States does not oppose a sentence of time served.

## IV.   CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant with the Guideline range to a sentence of time served.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar 498-610

  /s/ David P. Saybolt
David P. Saybolt
Assistant United States Attorney
Federal Major Crimes Section
Virginia Bar #44518
555 4th Street, N.W.
Washington, DC 20530
(202) 307-6080
Fax: 353-9414
David.Saybolt@usdoj.gov

---

[1] In view of the United States' allocution and defendant's Guideline range, defense counsel has represented that he agrees that the question of a downward departure is moot.